IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | |
|---|---|
| MITCHEL H. COLE ) | |
| ) | |
| Plaintiff, ) | Case No. 1:06CV00102 |
| v. ) | |
| ) | **OPINION** |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF ) | By: James P. Jones |
| SOCIAL SECURITY, ) | Chief United States District Judge |
| ) | |
| Defendant. ) | |

*Mary C. Hendricks, Browning, Lamie & Gifford, P.C., for Plaintiff; Sara Bugbee Winn, Assistant United States Attorney, Roanoke, Virginia, Michael McGaughran, Regional Chief Counsel, and Shawn E. Carver, Assistant Regional Counsel, Region III, Social Security Administration, Philadelphia, Pennsylvania, for Defendant.*

In this social security case, I affirm the final decision of the Commissioner.

I

Mitchel H. Cole filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C.A. §§ 401-433 (West 2003 & Supp. 2007) ("Act"). Jurisdiction of this court exists pursuant to 42 U.S.C.A. § 405(g).

My review under the Act is limited to a determination as to whether there is substantial evidence to support the Commissioner's final decision. If substantial evidence exists, this court's "inquiry must terminate," and the final decision of the Commissioner must be affirmed. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Id.*

The plaintiff filed for DIB on September 28, 2005, alleging nerve damage in his neck with an onset date of August 3, 2005. (R. at 54-56.) The plaintiff's application for DIB was denied initially on October 21, 2005, and upon reconsideration on December 2, 2005. (R. at 24-28, 35-37.) The plaintiff requested and received a hearing before an administrative law judge ("ALJ"), which was held on April 17, 2006. (R. at 144-85.) At the plaintiff's request, the record was held open by the ALJ for two weeks following the hearing to allow for the submission of additional medical records. (R. at 13.) However, no additional records were submitted by the plaintiff at that time.

By a decision dated May 22, 2006, the ALJ found that the plaintiff was not disabled and could perform work as a dispatcher, security guard, and protective service worker. (R. at 10-21.) The Appeals Council subsequently denied the

plaintiff's request for review of the ALJ's decision. (R. at 5-7.) Accordingly, the ALJ's opinion constitutes the final decision of the Commissioner. On October 18, 2006, the plaintiff filed his Complaint in this court seeking review of the decision below.

The parties have filed cross motions for summary judgment and have briefed the issues. The case is now ripe for decision.

II

The summary judgment record reveals the following facts. The plaintiff's alleged onset date of disability corresponds to an injury he sustained while driving a logging truck on August 3, 2005. (R. at 114.) That same day, the plaintiff reported to Twin County Regional Hospital and was prescribed Vicodin for pain, Flexeril for muscle spasm and tightness, and Advil for pain or fever. (R. at 122-25.) On August 12, 2005, he sought treatment for his injury from Paul C. Liebrecht, M.D. At this visit, he reported left shoulder pain that had been gradually improving since the date of the injury. (R. at 114.) He denied having any neck pain. (*Id*.) Dr. Liebrecht renewed the plaintiff's prescriptions for Vicodin, Flexeril, and Advil. (*Id*.) Dr. Liebrecht reported that although the plaintiff had a shoulder strain and contusion, he was free to continue normal work. (*Id*.)

On August 29, 2005, the plaintiff returned to Dr. Liebrecht for treatment. He complained that he continued to have pain in his left shoulder. (R. at 112.) Although the plaintiff previously had denied experiencing any neck pain from the accident, Dr. Liebrecht noted that he now claimed he had neck pain which had begun immediately after the accident. (*Id*.) He also reported a new onset of low back pain. (*Id*.) X rays of the cervical spine revealed mild degenerative disc disease. (*Id*.) Dr. Liebrecht concluded that the plaintiff had mild to moderate cervical strain, cervical spondylosis, traumatic biceps tendonitis, and lumbar sacral muscular strain. (*Id*.) He prescribed Voltaren and refills of Vicodin and Flexeril. (*Id*.)

On September 6, 2005, the plaintiff underwent a magnetic resonance imaging ("MRI") of his cervical spine, which revealed mild to moderate disc protrusions at C5-6 and C6-7 with borderline spinal cord impingement. (R. at 113, 120.) The MRI revealed no herniated discs and showed that the plaintiff had mild spinal cervical stenosis and two bulging discs. (R. at 111.) A left shoulder MRI taken on the same day was completely normal with no evidence of internal derangement. (*Id*.) The plaintiff's rotator cuff and glenoid labrum were both normal. (R. at 121.)

On September 26, 2005, the plaintiff returned to Dr. Liebrecht for continued treatment of pain in his neck and left shoulder. (R. at 110.) Dr. Liebrecht recommended physical therapy three times a week for two weeks and kept the

plaintiff on Vicodin, Voltaren, and Flexeril. (*Id.*) He suggested that the plaintiff refrain from doing a lot of over the road driving and limited him to no lifting, pushing, pulling and carrying over ten pounds, no repetitive twisting and bending, and no driving over a half hour. (*Id.*)

On October 10, 2005, the plaintiff reported to Dr. Liebrecht that he felt mild improvement in his symptoms after two physical therapy sessions. (R. at 109.) Upon physical examination of the plaintiff, Dr. Liebrecht noted that he appeared to have close to a full range of motion in his neck with no significant tenderness. (*Id.*) He also found that the plaintiff had far less tenderness along the scapula region compared with his last visit. (*Id.*) The plaintiff was advised to continue his regimen of physical therapy, Voltaren, and Flexeril and to continue the occasional use of Vicodin for pain. (*Id.*)

On October 19, 2005, the plaintiff's last recorded visit to Dr. Liebrecht, he was noted as having a full range of motion in his neck with twisting right to left. (R. at 108.) His flexion was estimated to be at eighty degrees, and he was able to extend his neck ten degrees beyond neutral. (*Id.*) The plaintiff had no lumbar sacral tenderness and his motor and sensory functions remained intact in both upper and lower extremities. (*Id.*) Dr. Liebrecht opined that based on the plaintiff's symptoms and his level of pain he would still be able to do some kind of light duty work. (*Id.*) He

also continued the plaintiff on physical therapy three times a week for two and a half weeks.[1]  (*Id.*)

The record contains a narrative report from the plaintiff's physical therapist, Kristine M. Hampton.  This report noted that the plaintiff attended a total of six physical therapy session after October 6, 2005, and that he stopped going because of financial reasons.  (R. at 136.)  The report also indicated that the plaintiff had middle to high levels of pain in his neck, back, and shoulder.  (*Id*.)

On October 18, 2005, Shirish Shahane, M.D., a state agency physician consultant, reviewed the medical evidence in the record and concluded that the plaintiff was able to perform a medium level of work.  (R. at 127, 133.)  Dr. Shahane agreed that the medical evidence established that the plaintiff had cervical spondylosis, cervical strain, and cervical spinal stenosis.  (R. at 131.)  Dr. Shahane disagreed with Dr. Liebrecht's finding of limitation of lifting, pushing, pulling, and carrying of ten pounds, and other limitations he listed in his September 26, 2005, treatment notes.  (*Id*.)  Dr. Shahane also noted that the plaintiff's medical records document that he had some improvement with medication and that he did not have any serious nerve or muscle damage.  (*Id*.)

---

[1] The plaintiff testified before the ALJ that he did not return to Dr. Liebrecht because he was unable to pay for such treatment.  (R. at 159-60.)

On April 17, 2006, the plaintiff testified at the hearing before the ALJ. During questioning, he admitted he was still able to drive and still had his commercial driving license. (R. at 164.) He also testified about routine activities he is able to undertake such as washing dishes, sweeping, mopping, vacuuming, doing laundry, making beds, and grocery shopping. (R. at 164-65.) He also stated that he is able to work around the house by doing chores such as mowing the yard, cleaning up brush, and feeding and caring for the approximately twenty chickens he owns. (R. at 167.) The plaintiff also stated that he could reach into upper cabinets, bend over, squat, crouch, and climb stairs. (R. at 162-63.)

A vocational expert, Annmarie Cash, also testified before the ALJ regarding the plaintiff's past work and his capacity to perform other work in the national economy. (R. at 172-79.) Cash testified that the plaintiff's past work as a truck driver, forklift operator, and quality control worker for a factory were all light and semi-skilled work. (R. at 173-74.)

The ALJ asked Cash to consider a person the same age as the plaintiff with his same education, background and physical condition. Cash testified that such a hypothetical person could work as a dispatcher, protective worker, and gate guard. (R. at 178.)

-7-

Case 1:06-cv-00102-JPJ-PMS   Document 19   Filed 10/31/07   Page 7 of 17   Pageid#: 274

At the hearing the plaintiff testified that he graduated from high school in 1975 and that he did not require any special education classes. (R. at 67, 154.) Despite this testimony, plaintiff's counsel requested a supplemental hearing to assess the plaintiff's school records because he claims they are inconsistent with those of a high school graduate. However, the plaintiff's records clearly indicate he is a high school graduate. (R. at 67.)

On April 17, 2007, in conjunction with the plaintiff's Motion for Summary Judgment, he also filed medical records detailing visits he made to Neal Jewell, M.D., from November 2006 to March 2007. (Pl.'s Ex. 1.)

III

My review is limited to a determination of whether there is substantial evidence to support the Commissioner's final decision. 42 U.S.C.A. § 405(g); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). If substantial evidence exists, the final decision of the Commissioner must be affirmed. Substantial evidence means "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."

*Laws*, 368 F.2d at 642. It is the role of the ALJ to resolve evidentiary conflicts, including inconsistences in the evidence. Where there is substantial evidence to support the finding below, this court may not substitute its judgment for that of the Commissioner. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

A claimant bears the burden of proving that his impairments amount to a disabling condition. *See* 42 U.S.C.A. § 423(d)(5)(A); 20 C.F.R. § 404.1512 (2007). The Commissioner applies a five-step sequential evaluation process in assessing whether a claimant is disabled. The Commissioner considers, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to his past relevant work; and (5) could perform other work present in the national economy. *See* 20 C.F.R. § 404.1520 (2007). If it is determined at any point in the five-step analysis that the claimant is not disabled, then the inquiry immediately ceases. *See Bowen v. Yuckert*, 482 U.S. 137, 141-42 (1987).

The Commissioner's regulations define disability "as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §

404.1505 (2007). Thus, if the plaintiff retains the ability to perform work in the national economy, he cannot be classified as disabled.

The issue presented in this appeal is whether there is substantial evidence in the record to support the ALJ's decision that the plaintiff was not disabled on or before May 22, 2006. For the reasons that follow, I find that there is substantial evidence in the record to support the ALJ's finding that the plaintiff was not disabled on or before May 22, 2006.

As stated above, the court's role in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. In determining whether substantial evidence supports the Commissioner's decision, I must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting the evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

The majority of the medical records submitted by the plaintiff to support his claim of disability are from his treating physician, Dr. Liebrecht. Although the plaintiff has submitted a narrative statement from a physical therapist to support his contention that he has middle to high levels of pain due to back, neck, and shoulder impairments, a physical therapist is not considered an acceptable medical source

under the regulations. *See* 20 C.F.R. § 404.1513 (2007). Therefore, the ALJ was entitled to give little weight to such evidence.

After examining the medical records from Dr. Liebrecht, the ALJ found that they contained "relatively benign objective findings" and a "limited degree of treatment." (R. at 19.) My review of the record indicates that there was substantial evidence to support this conclusion.

Dr. Liebrecht's records do not indicate that the plaintiff's impairments meet or medically equal any listed impairment in the regulations. *See* 20 C.F.R., Part 404, Subpart P, Appendix 1 (2007). Indeed, the medical evidence before the ALJ revealed that the plaintiff had only a mild to moderate condition and no condition or combination of conditions that could be considered extreme. (R. at 111.) For example, a cervical MRI that was ordered by Dr. Liebrecht revealed no herniated discs and showed that the plaintiff had mild spinal cervical stenosis and two bulging discs. (R. at 111-12.) X rays of the cervical spine revealed mild degenerative disc disease. (R. at 112.) Although the plaintiff complained of pain in his left shoulder, an MRI indicated that his left shoulder was completely normal. (R. at 111.)

Furthermore, on the plaintiff's last recorded visit to Dr. Liebrecht , the plaintiff was noted as having full range of motion in his neck twisting right to left. (R. at 108.) His flexion was estimated to be at eighty degrees, and he was able to extend his neck

ten degrees beyond neutral. (*Id.*) The plaintiff had no lumbar sacral tenderness and his motor and sensory functions remained intact in both upper and lower extremities. (*Id.*) Considering this improvement in the plaintiff's symptoms and pain, Dr. Liebrecht opined that he would still be able to do some kind of light duty work. (*Id.*)

In addition to the medical records, the plaintiff's reported daily activities provided the ALJ with substantial evidence on which to base his decision that the plaintiff was not disabled on or before May 22, 2006. At the hearing before the ALJ, the plaintiff testified about routine activities he is able to do. In particular, he testified that he is able to undertake such chores as washing dishes, sweeping, mopping, vacuuming, doing laundry, making beds, and grocery shopping. (R. at 164-65.) He also stated that he is able to work outside the house by doing such chores as mowing the yard, cleaning up brush, and feeding and caring for the approximately twenty chickens he owns. (R. at 167.) The plaintiff also stated that he could reach into upper cabinets, bend over, squat, crouch, and climb stairs. (R. at 163.) He also is able to drive. The ALJ was entitled to conclude that such activities were inconsistent with the plaintiff's claim of disabling back, neck, and shoulder pain.

Finally, the findings of the state agency physician provided substantial evidence to support the ALJ's decision in this case. After reviewing the medical records, Dr. Shahane, reviewed the medical evidence in the record and concluded

-12-

that the plaintiff was able to perform a medium level of work. (R. at 127, 133.) Dr. Shahane agreed that the medical evidence established that the plaintiff had cervical spondylosis, cervical strain, and cervical spinal stenosis. (R. at 131.) Dr. Shahane disagreed with Dr. Liebrecht's finding of a limitation in the plaintiff's ability to lift, push, pull, and carry no more than ten pounds, and other limitations he listed in his September 26, 2005, treatment notes. (*Id.*) Dr. Shahane also noted that the plaintiff's medical records document that he had some improvement with medication and no serious nerve or muscle damage. (*Id.*)

Considering the records from the plaintiff's treating physician, the plaintiff's reported daily activities, and the assessment of the state agency physician, I find that the record provided substantial evidence to support the ALJ's findings in this case.

IV

The plaintiff also has submitted an exhibit with his Motion for Summary Judgment containing multiple pages of medical documents. This evidence details treatment he received from November 2006 to March 2007. In submitting these documents, the plaintiff attempts to argue that they reveal that there was not substantial evidence to support the ALJ's decision. This evidence was not submitted to the ALJ or to the Appeals Council and is not otherwise a part of the administrative

record. Furthermore, the evidence deals with a period several months removed from the period in which the ALJ found that the plaintiff had no disability. Generally, evidence not submitted to the ALJ may not be used as a ground to attack the ALJ's decision as being unsupported by substantial evidence. *Matthews v. Apfel*, 239 F.3d 589, 594 (3d Cir. 2001). Under circuit precedent, this court is confined to the administrative record when considering whether substantial evidence supported the Commissioner's decision. *See Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991) (en banc). Accordingly, I will not consider this evidence as part of my review as to whether there is substantial evidence to support the ALJ's decision.

Evidence outside the administrative record that has been submitted for the first time to the district court may only be used to evaluate whether the case should be remanded to the Commissioner. *See* 42 U.S.C.A. § 405(g). It may not be used to reverse the decision of the Commissioner. Accordingly, I may only consider the exhibit submitted by the plaintiff with his Motion for Summary Judgment to determine whether a remand is appropriate in this case.

"A remand on the basis of new evidence is warranted only if the new evidence is material and there is good cause for its late submission." *Hayes v. Astrue*, 488 F. Supp. 2d 560, 564 (W.D. Va. 2007). There is no requirement that the new evidence

-14-

existed during the period on or before the date of the Commissioner's decision. *See Reichard v. Barnhart*, 285 F. Supp. 2d 728, 733 (S.D.W. Va. 2003). "Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome." *Wilkins*, 953 F.2d at 96.

The new medical records submitted by the plaintiff involve treatment dates that are months after the time period in question—on or before May 22, 2006. However, "[m]edical evidence obtained after an ALJ decision is material if it relates to the claimant's condition on or before the date of the ALJ's decision." *Williams v. Sullivan*, 905 F.2d 214, 216 (8th Cir. 1990). The evidence submitted by the plaintiff largely contains the treatment notes of Neal A. Jewell, M.D., an orthopedic surgeon. These notes indicate that the plaintiff sought treatment from Dr. Jewell for injuries he claimed that he sustained in an August 2005 work accident. This appears to be the same injury for which the plaintiff sought treatment from Dr. Liebrecht. Therefore, this evidence could feasibly relate to the plaintiff's condition on or before the date of the ALJ's decision in this case. Even assuming that these records relate to the plaintiff's condition on or before May 22, 2006, I find that it is unlikely this evidence would have changed the ALJ's decision.

First, Dr. Jewell's treatment notes document diagnoses similar to those of Dr. Liebrecht. For example, Dr. Jewell found that the plaintiff had mild to moderate

-15-

Case 1:06-cv-00102-JPJ-PMS   Document 19   Filed 10/31/07   Page 15 of 17   Pageid#: 282

degenerative disc disease/spondylosis with moderate broad-based herniated disc. (Pl.'s Ex. 1.) Although the plaintiff underwent a cervical discectomy and a cervical arthrodesis in January of 2007, on March 29, 2007, Dr. Jewell cleared him to return to work on April 2, 2007. The new evidence also shows that Dr. Jewell only placed moderate limitations on the plaintiff when he returned to work. For example, on March 29, 2007, Dr. Jewell only limited the plaintiff to lifting forty pounds occasionally, twenty pounds frequently, and ten pounds constantly. In sum, the additional evidence submitted suggests the plaintiff had a moderate to mild orthopedic condition of the cervical spine. This evidence is rather similar to the medical records in the administrative record. Despite the additional treatment that the plaintiff received from Dr. Jewell months after the date of the ALJ's decision, I find that this evidence would not result in a different opinion by the ALJ regarding whether the plaintiff was disabled on or before May 22, 2006.

A claimant may only be found to be disabled if he is unable to engage in any substantial gainful activity by reason of a medically determinable physical impairment. 20 C.F.R. § 404.1505. The additional evidence submitted by the plaintiff shows that he was ultimately cleared to return to work with only moderate limitations. Therefore, this evidence does not support the plaintiff's contention that he is disabled. Although the additional evidence documents the plaintiff's contention

-16-

that he has a back impairment, this evidence does not suggest that his condition is marked or extreme. Even considering Dr. Jewell's treatment notes, I find it is not reasonably possible this evidence would have changed the outcome of the case, because it reveals he was cleared to return to work with only moderate limitations. Accordingly, this evidence does not serve as a proper basis for remanding this case to the Commissioner for further consideration.

V

For the foregoing reasons, the plaintiff's Motion for Summary Judgment will be denied and the Commissioner's Motion for Summary Judgment will be granted. An appropriate final judgment will be entered.

    DATED: October 31, 2007

    /s/ JAMES P. JONES
    Chief United States District Judge